UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

In Re:

JOSE CORDOVA AND NANCY
PAVIC,

　　　　　　　　Debtors.

Civ. No. 2:13-810 (KM)

OPINION

## KEVIN MCNULTY, U.S.D.J.:

Gary S. Jacobson, the Trustee (the "Trustee"), appeals from an order of the United States Bankruptcy Court for the District of New Jersey denying his motion to turn over rents that the Debtors, Jose Cordova and Nancy Pavic, have received and are receiving from a property they own in Paterson, New Jersey. The Honorable Novalyn L. Winfield denied the motion, finding that the rents were not part of the Debtors' estate because they had been absolutely assigned to their lender, PHH Mortgage Corp. c/o J.P. Morgan Mortgage Acquisition Corp. ("PHH"). The Trustee appeals from Bankruptcy Judge Winfield's ruling.

Judge Winfield's decision relies primarily on *In re Jason Realty L.P.,* 59 F.3d 423 (3d Cir. 1995). *Jason* held that, where the debtor has made a pre-petition absolute assignment of rents to a lender in connection with a loan, title immediately vests in the lender. Thus, even if the debtor retains a license to collect the rents, title to the rents remains with the lender, so they do not enter the estate upon a filing in bankruptcy. *Jason*—as one would ordinarily expect—presented a clash of rights between the lender and the debtor, in which the lender's rights were found to be superior.[1]

---

[1]　Here, and throughout, I use the term "lender," because it is inevitably a lender who stands in these shoes. It is important to remember that the holding of *Jason* applies to the lender, not in its capacity as lender, but in its capacity as assignee. The distinction is important because, although a secured creditor/ lienholder may have important rights in the bankruptcy case, a pre-petition assignee is an owner whose claim is that the property is not part of the bankruptcy estate at all. It is for this reason that the *Jason Realty* opinion states at the outset that "[t]he major question for decision is whether the assignment was an absolute assignment, as interpreted by the

1

This case, however, presented the bankruptcy court with a configuration perhaps never contemplated by the United States Court of Appeals for the Third Circuit when it decided *Jason Realty*. At the time the bankruptcy court made its decision, PHH as lender was not participating; for whatever reason, PHH had made no effort to seize these rents, and the Debtors were freely enjoying them. The dispute over rents, then, did not pit the lender's superior rights against those of the debtor, as in *Jason*; it was a contest between trustee and debtor. Understandably, the Trustee felt that, if the lender was not currently claiming the rents, they should be part of the estate, available for the satisfaction of claims. Thus the Trustee sought to persuade the bankruptcy court that *Jason* should be distinguished for purposes of this (presumably rare) scenario. That argument, although it did not prevail, is a substantial one.

This Court held oral argument on September 11, 2013, and required counsel for PHH to appear. To some degree, the position of PHH was updated and clarified in a way that it had not been before. Among other things, it became clear that PHH was no longer standing pat; PHH had filed an action in state court, seeking a receiver for the collection of the rents in question.

Frankly, no reading of *Jason* is entirely satisfactory in this unusual context. That said, for the reasons set forth below, I conclude that the bankruptcy court's reading is the better one, and I will affirm the holding of the bankruptcy court.

## I.   BACKGROUND

On February 29, 2012, Cordova and Pavic filed for relief under Chapter 7 of the Bankruptcy Code. The United States Trustee appointed Gary S. Jacobson as the case trustee.[2] The facts underlying this appeal are essentially undisputed.[3]

---

district court, or a collateral pledge, as construed by the bankruptcy court." 59 F.3d at 425. *See also* n.11, *infra*.

[2]    On March 1, 2012, the United States Trustee first appointed Charles M. Forman. On March 8, 2012, Jacobson was named successor trustee.

[3]    The Debtors have acknowledged that they agree with the facts put forth in the Trustee's Statement of the Case except in one regard, which relates to a characterization of *In re Jason Realty L.P.*, 59 F.3d 423 (3d Cir. 1995). PHH, which participated in this case on appeal, did not significantly contest the facts as related by the Trustee.

A. <u>The Debtors' Paterson Property</u>

At the time they filed for bankruptcy, the Debtors owned multiple properties, including a parcel at 175 17th Avenue, Paterson, New Jersey (the "Property"), valued at $171,000. (Trustee Br. at 3 [Docket No. 5]). The Debtors noted that the Property historically produced rental income, including $26,400 in gross receipts in the prior year. (*Id.*). The monthly income at the time was $3,550.[4] (*Id.*).

The Property is subject to a secured claim of Century 21 Mortgage in the amount of $271,240. (*Id.*). In connection with the mortgage transaction with the lender, Pavic executed a 1-4 Family Rider (the "Rider") on August 30, 2007. The Rider contains an assignment of rents provision (the "Assignment"):

> Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the rents to lender or Lender's agents. However, Borrower shall receive the rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.
>
> If the Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents

---

[4] The monthly rental income solely attributable to the Property may actually be the lesser sum of $2,300. The Debtors stated in their surreply to the Trustee's Motion to Turn Over Rents that $1,200 of the rental income flows from the Debtors' two other properties. (*Id.* at 5). The precise amount of the rent at issue is not material to the issues to be resolved on this appeal.

3

collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

. . .

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed received, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all sums secured by the Security Instrument are paid in full.

(Rider § 1-4(H), R., Ex. 3 at 2).

Shortly after the bankruptcy filing, the lender ("PHH")—actually PHH Mortgage Corp. c/o J.P. Morgan Mortgage Acquisition Corp., acting on behalf of Century 21 Mortgage[5]—moved for, and was granted, relief from the automatic stay. (Bankr. Op. at 2, Ex. 7 to R.). In its motion, PHH stated that the Property was encumbered by liens totaling $370,897.00, leaving the Property with

---

[5]  For simplicity, I refer to these lender entities collectively as "PHH".

negative equity of approximately $199,897.00.[6] (*Id.* at 2). Although the mortgage has been in arrears since July 2009, PHH had not given formal notice of default at the time of Trustee's appeal. (Trustee's Br. at 4; Debtor's Br. at 1; PHH's Br. at 1-2; Banrk. Op. at *5-6) PHH now states, however, that, having obtained relief from the automatic stay, it has filed an action in state court seeking the appointment of a rent receiver. (PHH's Br. at 2-3).

Despite the Property's substantial lack of equity, the Trustee has not abandoned the Property. While the issue on appeal pertaining to collection of rents is pending, the Trustee has not closed the first Meeting of Creditors. (*Id.*). Meanwhile, the Debtors continue to receive the rents on the Property but, instead of making mortgage payments, apparently use the rental income for personal living expenses. (Bankr. Op. at 2).

### B. Judge Winfield Denies the Trustee's Motion to Turn Over the Rents

On September 26, 2012, the Trustee moved to compel the Debtors to turn over the rents they were receiving. (R., Ex. 1). The Debtors responded; PHH did not. Judge Winfield held oral argument, and, on December 17, 2012, she issued a written opinion. In short, she applied *In re Jason Realty L.P.*, 59 F.3d 423 (3d Cir. 1995), and denied the Trustee's motion because the Assignment took the rents outside of the Debtors' estate.

To determine whether the Assignment was an absolute one, Judge Winfield applied New Jersey state law, as explicated in *Jason Realty*: "[A]n assignment is absolute if 'its language demonstrates an intent to transfer immediately the assignors right and title to the rent.'" (Bankr. Op. at 4 (quoting *Jason Realty*, 59 F.3d at 427)). And an assignment, if absolute, immediately transfers title to the rents when it is executed. (Bankr. Op. at 4-5 (citing *Jason Realty*, 59 F.3d at 427)). Judge Winfield found that "the rents were absolutely assigned to" PHH and that "title to the rents vested in the Lender in August 2007 when the Debtors executed the Rider." (*Id.*). Thereafter, Debtors never held any more than "a license to collect the rents, without any ownership rights in the rents." (*Id.*). Therefore, when the Debtors filed in bankruptcy in 2012, the rents did not become part of the estate.

The Trustee argued that, because the Debtors collect the rent, Section 542(a) of the Bankruptcy Code compels the Debtors to deliver the rents to the

---

6     The Debtors valued the Property at $171,000, subject to Century 21 Mortgage's secured claim of $271,240, plus over $49,000 in interest and $32,000 in advances.

trustee. (*Id.*). Judge Winfield rejected this argument, reasoning that the absolute Assignment implied that the rents were not property of the estate, even if PHH had not revoked the Debtors' license to receive them. (*Id.* at 6-7).

The Trustee then argued that, in equity, a Chapter 7 debtor should not be allowed to use the rental income to the detriment of PHH or other creditors. (*Id.*). Judge Winfield was not persuaded:

> While the Trustee appears to be correct that the Debtor's continued use of the rents for their benefit is a detriment to the Lender [*i.e.*, PHH], the court can perceive no detriment to any other creditor of the bankruptcy estate in light of the fact that the rents are not estate property. The Trustee potentially could collect the rents for the Lender, but there is nothing in the record before the court which indicates that PHH has authorized the Trustee to take such action. Absent such authorization, the Trustee is not the proper party to bring this action, and there is no legally cognizable basis to seek turnover of rents in order to vindicate perceived Bankruptcy Code policies.
>
> PHH has the same rights now as it had pre-bankruptcy and can still presently give notice of default to the Debtors and make demand on the tenants for the rents. In the alternative, PHH can make a request in state court that a receiver be appointed to collect the rents. No action need be taken in bankruptcy court to vindicate the Lender's rights and interests.

(*Id.* at 6-7).

In short, the bankruptcy court would not officiously enforce rights that PHH itself was neglecting. There was no cognizable damage to other creditors, because these funds would never have been in the bankruptcy estate in the first place. And finally, the Trustee lacked Article III or prudential standing to collect rents for the benefit of PHH.[7] (*Id.* at 7).

---

[7] There is no need to address standing at length. The Trustee clearly has standing to assert an entitlement to the rents as part of the estate. *See* 11 U.S.C. § 704(a). A separate question, however, is whether the Trustee may assert PHH's entitlement to the rents. On standing grounds, Judge Winfield rightly held that the Trustee could not.

6

C. The Trustee Appeals

On February 8, 2013, pursuant to 28 U.S.C. § 158(a), the Trustee appealed Judge Winfield's order to this Court. The Debtors filed a brief in opposition. At this Court's request, PHH responded on September 9, 2013. Its three-page brief opposed the Trustee's appeal.

The Court held oral argument September 11, 2013. Pursuant to this Court's order, counsel for PHH appeared.

**II.    LEGAL STANDARD**

The Court has jurisdiction to hear appeals of final judgments and orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). A district court reviews "'the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof.'" *In re American Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007) (quoting *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (quotation and citation omitted)). A district must separately analyze mixed findings of fact and conclusions of law, and appropriately apply the applicable standards – "clearly erroneous" or *de novo* – to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102–03 (3d Cir. 1981)). "The district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

Here, the Court reviews Judge Winfield's opinion *de novo* because the Trustee is appealing a legal determination under the Bankruptcy Code, incorporating state law, that the rents were not estate property.

**III.   ANALYSIS**

The Court must decide whether the rental income should have been classified as property of the estate under 11 U.S.C. § 541(a)(1) or (6). All property in which the debtor holds an interest at the commencement of bankruptcy is part of the estate. 11 U.S.C. § 541(a)(1).[8] This includes rents or

---

[8]    Section 541(a) defines the estate as including "all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

7

other proceeds from property of the estate. 11 U.S.C. § 541(a)(6).[9] Where a trustee is appointed to oversee the estate, a debtor is required to "surrender to the trustee all property of the estate . . . ." 11 U.S.C. § 521(a)(4). If the debtor does not do so, the trustee may proceed against the debtor by motion. Fed. R. Bankr. P. 9014(a).

The question here is whether rents that the Debtors are collecting are property of the estate. Setting aside one issue relating to notice of default, discussed below, there seems to be no disagreement as to the following principle: If the rents were absolutely assigned to the lender, PHH, in 2007, they were not the property of the Debtors when they filed in bankruptcy in 2012. And therefore they would not be property of the estate, and would not be available to the Trustee.

### *The absolute assignment under* Jason Realty

The absolute assignment issue is one of New Jersey state law. "Assignments of rents are interests in real property and, as such, are created and defined in accordance with the law of the situs of the real property." *In re Jason Realty, L.P.*, 59 F.3d 423, 427 (3d Cir. 1995) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979) and *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 37 (3d Cir. 1993)). The situs of the real property is, of course, New Jersey. Under *Butner v. United States*, the court must therefore look to New Jersey state law to determine whether the debtor has an interest in property. 440 U.S. at 55.

State law is clear as to the effect of an absolute assignment. Applying New Jersey law, *Jason Realty* held that "[a]n absolute assignment transfers title to the assignee upon its execution." 59 F.3d 423, 427 (3d Cir. 1995) (citing *New Jersey Nat'l Bank & Trust Co. v. Wolf*, 108 N.J. Eq. 412, 155 A. 372 (N.J. Ch. 1931)). "An assignment is absolute if its language demonstrates an intent to transfer immediately the assignor's rights and title to the rents." *Jason Realty*, 59 F.3d at 427 (citing *In re Winslow Center Assocs.*, 50 B.R. 679, 681-2 (Bankr. E.D. Pa. 1985) (applying New Jersey law)).

In *Jason Realty,* a Chapter 11 case, the debtor sought to use rental income from its property to fund a reorganization. 59 F.3d at 426. The property's mortgage documents, however, contained an assignment of rents to

---

[9] The bankruptcy estate includes, *inter alia*, "(6) [p]roceeds, product, offspring, rents, or profits of or from property of the estate . . . ." 11 U.S.C. § 541(a)(6).

the lender.[10] *Id.* The Third Circuit sided with the lender, finding that this assignment of rents was absolute. *Id.* at 428. As a result, "the rents were assigned to [the lender] and were not property of the bankruptcy estate." *Id.* at 429. In so ruling, the court was well aware that an effective reorganization might depend on the rental income. Nevertheless, state property rights set a limit on the power of a bankruptcy court to "exercise its broad equitable and discretionary powers . . . to craft a recovery that will permit some use of the rents by the debtor." *Id.*[11]

---

[10] The assignment at issue in *Jason Realty* stated:

> THAT the Assignor for good and valuable consideration, receipt whereof is hereby acknowledged, hereby grants, transfers and assigns to the Assignee the entire lessor's interest in and to those certain leases . . . TOGETHER with all rents, income and profits arising from said leases.
>
> . . .
>
> So long as there shall exist no default by the Assignor in the payment of the principal sum, interest and indebtedness secured hereby and by said Note and Mortgage, . . . the Assignor shall have the privilege to collect . . . all rents, income and profits arising under said leases or from the premises described therein and to retain, use and enjoy the same.

59 F.3d at 426 (quoting assignment).

[11] Those concerns are particularly appropriate because New Jersey follows the lien theory, not the title theory, of mortgages. Consequently, the rights of a mortgagee as secured creditor are very different from the rights of a title holder, such as a pre-petition absolute assignee.

> Under New Jersey law, however, such a goal [*i.e.,* an effective reorganization using rents as cash collateral] cannot be reached by merging the rights of an assignee of leases with those of a mortgagee. These concepts are not fungible, but embrace separate and distinct attributes of property law, as well as degrees of gradation of title and basic differences as to how and when title passes between the debtor and the secured creditor. Thus, in the case at bar, although it was clear that [the lender] was proceeding as an assignee of leases, the bankruptcy judge refused to follow the teachings of *Commerce Bank* [*v. Mountain View Village, Inc.,* 5 F.3d 34 (3d Cir. 1993)] on the basis that *mortgages* are treated differently in New Jersey than in Pennsylvania: Pennsylvania is "a title state and not a lien state." App. at 149. The judge confused assignee apples with mortgagee oranges. ... It is important in interpreting New Jersey law that the otherwise worthy desire for achieving a reorganization under Chapter 11 should not trump the rights of an assignee of a lease under a pre-petition assignment.

Whether an assignment is "absolute" can be a debatable issue, but not, as it happens, in this case. Here, neither party denies that the Assignment of rents (quoted above at pp. 3-4), expresses a clear intent to transfer title immediately. This Assignment is not equivocal, conditional, or forward-looking; it is present and absolute. The transfer of title therefore took place "upon its execution." *Jason Realty*, 59 F.3d at 427. And this Assignment was executed on August 30, 2007, five years before the Debtors filed in bankruptcy.

The Debtors therefore argue that, in this case, the *Jason* holding leads straightforwardly to the *Jason* result: the rents, having been absolutely assigned, are not part of the estate. Title passed at the time of the assignment, long before the bankruptcy filing, and there is no more to be said.

### *PHH's failure to pursue the rents*

The Trustee suggests that that *Jason* may be distinguished. Ordinarily, the absolute-assignment issue would be played out, as in *Jason,* as a dispute between the assignor and the assignee—commonly, the debtor and the lender. Here, however, the lender, PHH—at least at the time of the bankruptcy judge's decision—had not served a formal notice of default and was not actively asserting its right to the rents. Instead, the Debtors continued to collect and enjoy the rents. Consequently, the issue emerged as a dispute between the Trustee and the Debtors. The Trustee believed, not unreasonably, that if PHH was not claiming the rents, the creditors of the estate, not these Chapter 7 Debtors, should enjoy the windfall.

There is a certain appeal to a priority system, or ranking, in which the Debtors were last in line for these funds. The order might be: (1) PHH, as lender/assignee (2) the Trustee, as representative of the other creditors; and finally (3) the Debtors. Sensible as that might seem, it has no support in the case law. The issue is not one of priority; the yes-or-no question before the Court is whether this property is part of the estate.

Does it make a difference that PHH did not serve a formal notice of default and did not actively claim the rents? The Trustee says it does, and suggests that *Jason* and other precedents state as much. I therefore survey those precedents with an eye to that particular issue.

---

*Id.* at 429. The failure to observe the distinction between the rights of a mortgagee and assignee (who, it must be said, are often the same person) has led to considerable confusion in the case law. *See id.* at 429-30.

The assignment in *Jason Realty* granted a license to collect rents "until default," but did not require formal notice of default. 59 F.3d at 425. Upon default, the *Jason* lender sent notices to the tenants demanding that they pay rent directly to lender. *Id.* at 426. Such a revocation, or notice of default as provided in the Assignment, did not happen here.[12]

The Third Circuit stated in *Jason* that "[u]pon default, [the debtor] had no interest in the rents." *Id.* at 425 (emphasis added). From that sentence, the Trustee draws the negative implication that, unless and until PHH served a notice of default, the Debtors retained their interest. I do not read *Jason* that way. Certainly, the administrative convenience of having the property owner collect the rents does not change the fact that title passed at the time of the assignment. "The assignment of rents is distinct and independent of the means granted the mortgagee to collect them." *Jason*, 59 F.3d at 428 (quoting *Stanton v. Metro. Lumber Co.*, 107 N.J. Eq. 345, 348, 152 A. 653, 655 (Ch. 1930)). That passing of title, not the convenience of having the debtors collect the rents, is the critical event. Under this Assignment, title passed immediately, not upon default.

So it is not sustainable that the Debtors here retained title. As is common, however, the Debtors, despite having assigned title to the lender, still had a license to collect the rents. The nature of that license is here defined by the Assignment: "Borrower [*i.e.*, the Debtors] shall receive the rents until: (i) Lender has given Borrower notice of default...and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent."

*Jason Realty* cites an earlier district court case which, in the Trustee's view, suggests that a debtor possesses some sort of property interest in that *license* to collect rents. That district court case, *Matter of Glen Properties*, 168 B.R. 537 (D.N.J. 1993) (Debevoise, J.), presaged the holding of *Jason*, and *Jason* relied on it. *Glen Properties* states in passing that the debtor's "only interest in the rents was provided by the license. When that license terminated due to Glen's default, Glen simply had no present interest left." *Id.* at 541. Again drawing a negative implication, the Trustee concludes that if Glen had no "present interest left," then it must have possessed such an interest before. The Trustee buttresses this argument with citations to New Jersey cases which hold that a license, generally speaking, is a type of property interest. (Tr. Br. at 11 (quoting *Finlay & Assocs., Inc. v. Borg-Warner Corp.*, 146 N.J. Super. 210,

---

[12] PHH now contends, however, that its motion for relief from the automatic stay, in essence an announcement of intent to sue, was the equivalent of a notice of default.

219, 369 A.2d 541, 546 (Ch. Div. 1976) *aff'd*, 155 N.J. Super. 331, 382 A.2d 933 (App. Div. 1978) ("Although the word 'license' has many applications, it means in [the Franchise Practices Act] to use as if *it is one's own*. It implies a *proprietary interest*, and this is what the Legislature intended in effect." (emphasis added))). Property interests, of course, may become part of the bankruptcy estate under Section 541(a)(1) of the Bankruptcy Code. *See* 11 U.S.C. § 541(a)(1).

Thus, in the Trustee's view, the existence or not of an explicit revocation of the license to collect rents is significant. The license exists until it is terminated. And this license, like a liquor license or a patent license, has value, which should be considered part of the estate.

Assuming the license represents some kind of interest, I am still not persuaded that it is a part of the estate that can be captured by the Trustee for the benefit of creditors:

*First*, it is not the kind of license traditionally regarded as property, like a liquor license, a trademark license or a patent license. It cannot be bought and sold, and it has no particular value. A negative implication from a statement in *Glen Properties* is simply too weak a basis for setting aside the holding of *Jason Realty*. And there is perhaps a stronger, contrary negative implication to be drawn from *Jason*'s disapproval of prior cases favorable to the Trustee's position here.[13]

---

[13] *See, e.g., n re Mocco*, 176 B.R. 335, 343-44 (D.N.J. 1995) ("most cases which concluded that the rents were not property of the estate, nevertheless acknowledged that the debtor did retain some kind of interest in the rents."). *Mocco* was decided before the Third Circuit decision in *Jason Realty*, and is inconsistent with it. *Jason* explicitly disapproved *Mocco*. 59 F.3d at 429 & n.2.

At the same time, *id., Jason* disapproved *In re Princeton Overlook Joint Venture*, 143 B.R. 625, 633 (Bankr. D.N.J. 1992), which held that even though an assignment may vest absolute ownership in lender, "the debtor has a collection interest in the rents, [and] therefore, the rents are property of the estate." That is directly contrary to the holding of *Jason*.

*Jason* more generally noted the "confusion" between the rights of a mortgagee and assignee in *Mocco* and *Princeton Overlook*. 59 F.3d at 429-30. And, to a lesser degree, *Jason* attributed that same confusion to *Midlantic National Bank v. Sourlis*, 141 B.R. 826 (D.N.J. 1992), which stated that the assignee had "a perfected security interest in the rents...." *Id.* at 834.

*Second,* even while the license remains unrevoked, it signifies little more than the fungibility of cash. As long as the borrower is making the mortgage payments, the lender is indifferent to the source of the money. Under those circumstances, the lender has no reason to care if the borrower is collecting the rents. Indeed, this collection license is more akin to a service performed for the benefit of the lender, which otherwise might have to collect the rents on its own.

*Third,* it is now clear, if it was not before, that PHH is asserting its rights as assignee. Early in the bankruptcy case, PHH obtained relief from the automatic stay, which can only signify intent to sue. And sue it has; PHH represents that it has filed in state court an action for the appointment of a rent receiver.

The Trustee makes a more general appeal to the broad equitable powers of a bankruptcy court. *See generally United States v. Energy Resources,* 495 U.S. 545, 549 (1990) (the Bankruptcy Code's provision permitting a bankruptcy court to "'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of the Code . . . [is] consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships" (quoting 11 U.S.C. § 105(a)); *In re Clark Entm't Grp., Inc.,* 183 B.R. 73, 78 (Bankr. D.N.J. 1995) (citing *Energy Resources* in stating "[t]he bankruptcy court is one of equity and equitable principles must guide the bankruptcy judge."). In general, I would defer on appeal to the bankruptcy judge's exercise of equitable discretion. More important, *Jason Realty* has placed an explicit limit on that discretion. Faced by an absolute assignment of rents like the one here, *Jason* held that the bankruptcy court, as a matter of law, could not "exercise its broad equitable and discretionary powers ... to craft a recovery that will permit some use of the rents by the debtor." 59 F.3d at 429-30.

As I have said, this is a close case, but I find more merit in the position that the rule of *Jason Realty* should be applied rigidly and predictably. To be sure, this situation is distinct from that in *Jason Realty*; *Jason* rests on the unspoken, commonsense premise that the lender wants, and is seeking, the rent payments to which the lender already possesses title. Through inaction, PHH has permitted the Debtors to keep rent payments even as they have ceased making mortgage payments on the property. I am nevertheless inclined to refrain from creating an exception to the *Jason* rule based on the unusual circumstances presented here. And I am reinforced in that inclination by PHH's

recent decision, however belated, to pursue its virtually unquestioned right to these rents in state court.

### III. CONCLUSION

For the reasons stated above, Judge Winfield's Order is **AFFIRMED**. An appropriate order follows.

_____
HON. KEVIN MCNULTY
United States District Judge

Dated: October 22, 2013